MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: STANLEY J. OKULA (SO-6775)
    SHARON COHEN LEVIN (SCL-4214)
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Tel. (914) 993-1961
    (212) 637-1060



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,           :     VERIFIED COMPLAINT

            Plaintiff,             :     08 CV 2833

            - v -                   :

$1,837,905.61 In U.S. CURRENCY,     :

            Defendant-in-Rem.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff United States of America, by its attorney, MICHAEL J. GARCIA, United States Attorney for the Southern District of New York, for its complaint alleges, upon information and belief, as follows:

### I. JURISDICTION AND VENUE

1. This action is brought by the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984, seeking the forfeiture of all right, title and interest in approximately $1,837,905.61 in United States Currency ("the Defendant in Rem"). Forfeiture

is sought on the grounds that the Defendants in Rem constitute or are derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper pursuant to 28 U.S.C. § 1355 because acts and omissions giving rise to the forfeiture occurred in the Southern District of New York.

## II. PROBABLE CAUSE FOR FORFEITURE

4. During the period from at least in or about 1993 through at least in or about 2003, Robert Pfaff, a resident of Colorado, participated in a massive fraud scheme with several others, including: Chandler S. Moisen, a resident of Colorado and California; Domenick DeGiorgio, a senior employee at Bayerische Hypo- und Vereinsbank, A.G. ("HVB"), a German-owned bank and financial institution operating in the United States through its New York Branch, located at 150 East 42d Street; certain senior officers of a corporation located on the island of Saipan (the "Saipan Company"), which is part of the Commonwealth of the Northern Mariana Islands ("CNMI"); a citizen and resident of the Philippines; and a citizen and resident of Norway. That scheme had as its objects: (i) to defraud the Internal Revenue Service ("IRS"), an agency of the Treasury Department; (ii) to defraud the taxing authorities of the CNMI; and (iii) to defraud the Saipan Company and to deprive the Saipan Company and its shareholders of the honest services of its officers and employees. The aforementioned scheme was executed in two principal ways: (i) devising,

marketing, and implementing tax shelter transactions, including transactions that involved the Saipan Company as a CNMI corporate taxpayer, and thereafter dividing and disbursing the fee income garnered through those transactions to Pfaff, Moisen, DeGiorgio, certain officers of the Saipan Company, and the other designers and implementers of the tax shelter transactions in a manner that would allow these individuals to hide the fee income from: the IRS; KPMG, which was Pfaff's employer between 1993 and 1997; the CNMI taxing authorities; and the Saipan Company; and (ii) covering up the receipt of the income by attempting to classify the income as part of a lending relationship. During the course of the fraud scheme, numerous interstate and international wire communications were effectuated in order to further the fraud scheme, including transfers of funds from, to, and through the Southern District of New York.

   5. One of the means and methods by which the aforementioned scheme to defraud was carried out was through the use of a citizen and resident of the Philippines. More particularly, after causing the Saipan Company to engage in tax shelter transactions and thereafter secretly dividing the profits derived from devising and implementing those transactions (and thereby defrauding the Saipan Company of the honest services of the officers who were sharing in the fees, unbeknownst to the Saipan Company), Pfaff, Moisen, DeGiorgio, certain senior officers of the Saipan Company, and others directed the proceeds of that fraud to bank accounts in Manila. Those off-shore transfers were utilized because off-shore financial transactions and bank accounts would and did make more difficult the

detection and analysis of the disbursement of fees to the co-schemers, including Pfaff, Moisen, DeGiorgio, and certain senior officers of the Saipan Company.

      6.    In addition to the foregoing, Pfaff attempted to defraud the IRS by creating phony paperwork to disguise the fee income he received from the tax shelter transactions (and which Pfaff hid from his partners at KPMG (when he worked there between 1993 and August 1997) and failed timely to report to the IRS), by attempting to make the income he received appear as "loans." To further this false and fraudulent depiction, between approximately 2000 and 2003, Pfaff caused in excess of $1,800,000 to be wire-transferred to a bank account in the Philippines, which was controlled by a co-schemer there; those funds were falsely depicted on loan schedules prepared by Pfaff and others in order to make the funds appear to be loan repayments to the co-schemer in the Philippines. Pfaff later provided false testimony and documents to the IRS — which had commenced a civil audit of Pfaff's individual income tax returns — to further the false characterization of the income as "loans." In truth and fact, the monies Pfaff sent to the Philippines represented proceeds from Pfaff's involvement in the tax shelter fee fraud on the IRS and CNMI tax authorities, and the scheme to defraud the Saipan Company, and were sent to the Philippines co-schemer who controlled the Manila-based account with the understanding that the funds would be returned to Pfaff after the IRS's scrutiny of Pfaff's activities was completed. (The Philippines co-schemer controlled the funds sent to him by Pfaff, occasionally moving it among offshore and investment accounts via wire transfers.)

4

7. Between 1993 and 2000, Pfaff received in excess of $3,750,000 that he failed timely to report to the IRS. In addition, Pfaff and others caused the Saipan Company to pay millions of dollars of tax shelter fees that Pfaff and the senior officers of the Saipan Company secretly split, unbeknownst to the Saipan Company's board of directors.

### III. CLAIM FOR FORFEITURE

8. Plaintiff repeats, realleges, and incorporates by reference herein each and every allegation contained in paragraphs one through eight of this Verified Complaint.

9. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in Section 1956(c)(7) of [title 18]), or a conspiracy to commit such offense," is subject to forfeiture to the United States.

10. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense listed under 18 U.S.C. § 1961(1). Section 1961(1) lists, among other offenses, violations of 18 U.S.C. § 1343 (relating to wire fraud).

11. Title 18, United States Code, Section 984 provides, in pertinent part, that

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –
>
> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

12. The Defendant in Rem is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because there is probable cause to believe that they constitute or are derived from proceeds traceable to an offense constituting specified unlawful activity, *to wit*, wire fraud, in violation of 18 U.S.C. § 1343.

13. By reason of the foregoing, the Defendant in Rem became and is subject to forfeiture to the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

WHEREFORE, Plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant in Rem and that all persons having an interest in the Defendants in Rem be required to appear and show cause why the forfeiture of the Defendant in Rem should not be decreed, that this Court decree forfeiture of the Defendant in Rem to

the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as it may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
March 18, 2008

                        MICHAEL J. GARCIA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for the Plaintiff
                        United States of America

By: _____
      STANLEY J. OKULA (SO-6775)
      SHARON COHEN LEVIN (SCL-4124)

## VERIFICATION

STATE OF NEW YORK         )
COUNTY OF NEW YORK        )
SOUTHERN DISTRICT OF NEW YORK )

      LAURA MERCANDETTI, being duly sworn, deposes and says that she is a Special Agent of the Internal Revenue Service and as such has responsibility for the within action; that she has read the foregoing Verified Complaint and knows the contents thereof, and that the same is true to the best of her own knowledge, information, and belief.

      The sources of deponent's information and the ground of her belief are official records and files of the United States and information obtained directly and indirectly by deponent during an investigation of alleged violations of Title 18, United States Code.

*[signature]*
LAURA MERCANDETTI
Special Agent
Internal Revenue Service

Sworn to before me this
18th day of March, 2008

*[signature]*
NOTARY PUBLIC

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2010